EAG:TM
F.#2009R00579

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 1 8 2010 ★

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

BROOKLYN OFFICE

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

JOHN BURKE,
DAVID D'ARPINO and
ANGELO RUGGIERO, JR.,

         Defendants.

- - - - - - - - - - - - - - - -X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. <u>09-135 (S-5)(SJ)</u>
(T. 18, U.S.C., §§
924(c)(1)(A)(i),
924(c)(1)(A)(ii),
924(c)(1)(A)(iii), 924(d),
924(j)(1), 1512(a)(2)(A),
1512(a)(2)(B)(i),
1512(a)(2)(C), 1512(c)(2),
1512(k), 1959(a)(1),
1962(d), 1963, 2 and 3551
<u>et seq.</u>; T. 21, U.S.C.,
§ 848(e)(1)(A); T. 28,
U.S.C., § 2461(c))

THE GRAND JURY CHARGES:

<u>INTRODUCTION</u>

At all times relevant to this Indictment unless otherwise indicated:

<u>The Enterprise</u>

1.   The members and associates of the Gambino organized crime family of La Cosa Nostra (the "Gambino crime family") constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact.  The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.  The Gambino crime family engaged in, and its

activities affected, interstate and foreign commerce. The
Gambino crime family was an organized criminal group that
operated in the Eastern District of New York and elsewhere.

2. La Cosa Nostra operated through organized crime
families. Five of these crime families - the Bonanno, Colombo,
Gambino, Genovese and Luchese crime families - were headquartered
in New York City, and supervised criminal activity in New York,
in other areas of the United States, and in some instances in
other countries. Another crime family, the Decalvacante crime
family, also existed, operating principally in New Jersey but
from time to time also in New York City.

3. The ruling body of La Cosa Nostra, known as the
"Commission," consisted of leaders from each of the crime
families. The Commission convened from time to time to decide
certain issues affecting all of the crime families, such as rules
governing crime family membership.

4. The Gambino crime family had a hierarchy and
structure. The head of the Gambino crime family was known as the
"boss." The Gambino crime family boss was assisted by an
"underboss" and a counselor known as a "consigliere." Together,
the boss, underboss and consigliere were the crime family's
"administration." With the assistance of the underboss and
consigliere, the boss was responsible for, among other things,
setting policy and resolving disputes within and between La Cosa

2

Nostra crime families and other criminal groups. The administration further supervised, supported, protected and disciplined the lower-ranking participants in the crime family. In return for their supervision and protection, the administration received part of the illegal earnings generated by the crime family. Members of the Gambino crime family served in an "acting" rather than "official" capacity in the administration on occasion due to another administration member's incarceration or ill health, or for the purpose of seeking to insulate another administration member from law enforcement scrutiny. Further, on occasion, the Gambino crime family was overseen by a "panel" of crime family members that did not include the boss, underboss and/or consigliere.

5. Below the administration of the Gambino crime family were numerous "crews," also known as "regimes" and "decinas." Each crew was headed by a "captain," also known as a "skipper," "caporegime" and "capodecina." Each captain's crew consisted of "soldiers" and "associates." The captain was responsible for supervising the criminal activities of his crew and providing the crew with support and protection. In return, the captain often received a share of the crew's earnings.

6. Only members of the Gambino crime family could serve as a boss, underboss, consigliere, captain or soldier. Members of the Gambino crime family were referred to on occasion

3

as "goodfellas" or "wiseguys," or as persons who had been "straightened out" or who had their "button." Associates were individuals who were not members of the Gambino crime family, but who nonetheless engaged in criminal activity for, and under the protection of, the Gambino crime family.

7. Many requirements existed before an associate could become a member of the Gambino crime family. The Commission of La Cosa Nostra from time to time limited the number of new members that could be added to a crime family. An associate was also required to be proposed for membership by an existing crime family member. When the crime family's administration considered the associate worthy of membership, the administration then circulated the proposed associate's name on a list given to other La Cosa Nostra crime families, which the other crime families reviewed and either approved or disapproved. Unless there was an objection to the associate's membership, the crime family then "inducted," or "straightened out," the associate as a member of the crime family in a secret ceremony. During the ceremony, the associate, among other things: swore allegiance for life to the crime family above all else, even the associate's own family; swore, on penalty of death, never to reveal the crime family's existence, criminal activities and other secrets; and swore to follow all orders issued by the crime

family boss, including swearing to commit murder if the boss
directed it.

Methods and Means of the Enterprise

8.     The principal purpose of the Gambino crime family
was to generate money for its members and associates.   This
purpose was implemented by members and associates of the Gambino
crime family through various criminal activities, including drug
trafficking, robbery, extortion, illegal gambling and
loansharking.   The members and associates of the Gambino crime
family also furthered the enterprise's criminal activities by
threatening economic injury and using and threatening to use
physical violence, including murder.

9.     Although the primary purpose of the Gambino crime
family was to generate money for its members and associates, the
members and associates at times used the resources of the Gambino
crime family to settle personal grievances and vendettas,
sometimes with the approval of higher-ranking members of the
family.   For those purposes, members and associates of the
enterprise were asked and expected to carry out, among other
crimes, acts of violence, including murder and assault.

10.     The members and associates of the Gambino crime
family engaged in conduct designed to prevent government
detection of their identities, their illegal activities and the
location of proceeds of those activities.   That conduct included

a commitment to murdering persons, particularly members or associates of organized crime families, who were perceived as potential witnesses against members and associates of the enterprise.

11. Members and associates of the Gambino crime family often coordinated criminal activity with members and associates of other organized crime families.

The Defendants

12. At various times relevant to this Indictment, the defendant ANGELO RUGGIERO, JR., was a soldier and associate in the Gambino crime family.

13. At various times relevant to this Indictment, the defendants JOHN BURKE and DAVID D'ARPINO were associates in the Gambino crime family.

COUNT ONE
(Racketeering Conspiracy)

14. The allegations contained in paragraphs one through thirteen are realleged and incorporated as if fully set forth in this paragraph.

15. In or about and between January 1980 and January 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOHN BURKE and DAVID D'ARPINO, together with others, being persons employed by and associated with the Gambino crime family, an enterprise that engaged in, and the activities of which affected,

6

interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5).

16.    The pattern of racketeering activity through which the defendants, together with others, agreed to conduct the affairs of the enterprise consisted of Racketeering Acts One through Eight, set forth below.    The defendants agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

RACKETEERING ACT ONE
(Cocaine and Marijuana Distribution)

17.    The defendant JOHN BURKE agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act One:

A.    <u>Cocaine and Marijuana Distribution Conspiracy</u>

18.    In or about and between January 1980 and June 2001, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOHN BURKE, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute one or more controlled substances, which offense involved (a) a substance containing cocaine, a Schedule II controlled substance,

7

and (b) a substance containing marijuana, a Schedule I controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1) and 846.

B. <u>Cocaine and Marijuana Distribution</u>

19. In or about and between January 1980 and June 2001, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOHN BURKE, together with others, did knowingly and intentionally distribute and possess with intent to distribute one or more controlled substances, which offense involved (a) a substance containing cocaine, a Schedule II controlled substance, and (b) a substance containing marijuana, a Schedule I controlled substance, contrary to Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

RACKETEERING ACT TWO
(Conspiracy to Murder and Murder - Daniel Zahn)

20. The defendant JOHN BURKE agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Two:

A. <u>Conspiracy to Murder Daniel Zahn</u>

21. In or about and between May 1982 and August 28, 1982, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOHN BURKE, together with others, did knowingly and intentionally

conspire to cause the death of Daniel Zahn, contrary to New York Penal Law Sections 125.25(1) and 105.15.

    B.   <u>Murder of Daniel Zahn</u>

       22.  On or about August 28, 1982, within the Eastern District of New York, the defendant JOHN BURKE, together with others, with intent to cause the death of Daniel Zahn, did knowingly and intentionally cause his death, contrary to New York Penal Law Sections 125.25(1) and 20.00.

RACKETEERING ACT THREE
(Conspiracy to Murder and Murder - Bruce Gotterup)

       23.  The defendant JOHN BURKE agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Three:

    A.   <u>Conspiracy to Murder Bruce Gotterup</u>

       24.  On or about and between November 1, 1991 and November 20, 1991, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOHN BURKE, together with others, did knowingly and intentionally conspire to cause the death of Bruce Gotterup, contrary to New York Penal Law Sections 125.25(1) and 105.15.

    B.   <u>Murder of Bruce Gotterup</u>

       25.  On or about November 20, 1991, within the Eastern District of New York, the defendant JOHN BURKE, together with others, with intent to cause the death of Bruce Gotterup, did

9

knowingly and intentionally cause his death, contrary to New York Penal Law Sections 125.25(1) and 20.00.

RACKETEERING ACT FOUR
(Robbery Conspiracy and Robbery - John Doe #1)

26.   The defendant DAVID D'ARPINO agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Four:

A.   <u>Robbery Conspiracy</u>

27.   On or about March 26, 1996, within the Middle District of Florida, the defendant DAVID D'ARPINO, together with others, with the intent to temporarily and permanently deprive a person of property, to wit: a Rolex watch, did knowingly and intentionally conspire to take such property from the person of another, to wit: John Doe #1, an individual whose identity is known to the Grand Jury, and, in the course of taking such property, to use force, violence and assault and putting in fear, contrary to Florida Statute Sections 812.13(2)(c), 777.04(3) and 770.04(4)(d).

B.   <u>Robbery</u>

28.   On or about March 26, 1996, within the Middle District of Florida, the defendant DAVID D'ARPINO, together with others, with the intent to temporarily and permanently deprive a person of property, to wit: a Rolex watch, did knowingly and intentionally take such property from the person of another, to wit: John Doe #1, and, in the course of taking such property, did

10

use force, violence and assault and putting in fear, contrary to Florida Statute Sections 812.13(2)(c) and 777.011.

RACKETEERING ACT FIVE
(Conspiracy to Murder and Murder - John Gebert)

29. The defendants JOHN BURKE and DAVID D'ARPINO agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Five:

A.   Conspiracy to Murder John Gebert

30. On or about and between April 1, 1996 and July 12, 1996, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOHN BURKE and DAVID D'ARPINO, together with others, did knowingly and intentionally conspire to cause the death of John Gebert, contrary to New York Penal Law Sections 125.25(1) and 105.15.

B.   Murder of John Gebert

31. On or about July 12, 1996, within the Eastern District of New York, the defendants JOHN BURKE and DAVID D'ARPINO, together with others, with intent to cause the death of John Gebert, did knowingly and intentionally cause his death, contrary to New York Penal Law Sections 125.25(1) and 20.00.

RACKETEERING ACT SIX
(Robbery Conspiracy and Attempted Robbery - Queens Residence)

32. The defendant JOHN BURKE agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Six:

11

A.   Robbery Conspiracy

33.   In or about and between July 1996 and July 1997, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant JOHN BURKE, together with others, did knowingly and intentionally conspire to forcibly steal property, to wit: United States currency, from an individual in a residence in Queens, New York, while aided by another person actually present, contrary to New York Penal Law Sections 160.10(1) and 105.10.

B.   Attempted Robbery

34.   In or about and between July 1996 and July 1997, both dates being approximate and inclusive, within the Eastern District of New York, the defendant JOHN BURKE, together with others, did knowingly and intentionally attempt to forcibly steal property, to wit: United States currency, from Jane Doe #1 and Jane Doe #2, individuals whose identities are known to the Grand Jury, in a residence in Queens, New York, contrary to New York Penal Law Sections 160.05, 110.00 and 20.00.

RACKETEERING ACT SEVEN
(Robbery Conspiracy and Robbery - John Doe #2)

35.   The defendant DAVID D'ARPINO agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Seven:

12

A.  Robbery Conspiracy

36.  In or about 2000, within the Eastern District of New York and elsewhere, the defendant DAVID D'ARPINO, together with others, did knowingly and intentionally conspire to forcibly steal property, to wit: marijuana and United States currency, from John Doe #2, an individual whose identity is known to the Grand Jury, in a residence in Long Island, New York, while aided by another person actually present, contrary to New York Penal Law Sections 160.10(1) and 105.10.

B.  Robbery

37.  In or about 2000, within the Eastern District of New York, the defendant DAVID D'ARPINO, together with others, did knowingly and intentionally forcibly steal property, to wit: marijuana and United States currency, from John Doe #2 in a residence in Long Island, New York, contrary to New York Penal Law Sections 160.05 and 20.00.

RACKETEERING ACT EIGHT
(Witness Tampering Conspiracy and Attempted Witness Tampering)

38.  The defendant DAVID D'ARPINO agreed to the commission of the following acts, either one of which alone constitutes Racketeering Act Eight:

A.  Witness Tampering Conspiracy

39.  In or about and between May 2009 and January 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DAVID D'ARPINO,

13

together with others, did knowingly and intentionally conspire to
(1) use physical force and the threat of physical force against a
person, to wit: John Doe #3, an individual whose identity is
known to the Grand Jury, with intent to (a) prevent the testimony
of such person in an official proceeding, to wit: a criminal
proceeding before a judge and court of the United States in the
Eastern District of New York, (b) cause and induce such person to
withhold testimony from said official proceeding, and (c) hinder,
delay and prevent the communication to one or more law
enforcement officers of the United States, to wit: Special Agents
of the Federal Bureau of Investigation, of information relating
to the commission and possible commission of one or more Federal
offenses, and (2) corruptly obstruct, influence and impede said
official proceeding, contrary to Title 18, United States Code,
Sections 1512(k), 1512(a)(2)(A), 1512(a)(2)(B)(i), 1512(a)(2)(C)
and 1512(c)(2).

   B.   <u>Attempted Witness Tampering</u>

        40.   In or about and between May 2009 and January 2010,
both dates being approximate and inclusive, within the Eastern
District of New York and elsewhere, the defendant DAVID D'ARPINO,
together with others, did knowingly and intentionally attempt to
(1) use physical force and the threat of physical force against a
person, to wit: John Doe #3, with intent to (a) prevent the
testimony of such person in an official proceeding, to wit: a

                              14

criminal proceeding before a judge and court of the United States in the Eastern District of New York, (b) cause and induce such person to withhold testimony from said official proceeding, and (c) hinder, delay and prevent the communication to one or more law enforcement officers of the United States, to wit: Special Agents of the Federal Bureau of Investigation, of information relating to the commission and possible commission of federal offenses, and (2) corruptly obstruct, influence and impede said official proceeding, contrary to Title 18, United States Code, Sections 1512(a)(2)(A), 1512(a)(2)(B)(i), 1512(a)(2)(C), 1512(c)(2) and 2.

  (Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

### COUNT TWO
(Murder in-Aid-of Racketeering)

  41. At all times relevant to this Indictment, the Gambino crime family, as more fully described in paragraphs one through thirteen above, which are realleged and incorporated as if fully set forth in this paragraph, constituted an "enterprise" as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that was engaged in, and the activities of which affected, interstate and foreign commerce.

  42. At all times relevant to this Indictment, the Gambino crime family, through its members and associates, engaged

15

in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts involving murder and robbery, contrary to New York State Penal Law and Florida State Law, narcotics trafficking, contrary to Title 21, United States Code, Sections 841 and 846, and obstruction of justice and witness tampering, contrary to Title 18, United States Code, Section 1512.

43. On or about July 12, 1996, within the Eastern District of New York, the defendants JOHN BURKE and DAVID D'ARPINO, together with others, for the purpose of gaining entrance to and maintaining and increasing position in the Gambino crime family, an enterprise engaged in racketeering activity, did knowingly and intentionally murder John Gebert, contrary to New York Penal Law Sections 125.25(1) and 20.00.

(Title 18, United States Code, Sections 1959(a)(1), 2 and 3551 et seq.)

## COUNT THREE
### (Murder - Continuing Criminal Enterprise)

44. On or about July 12, 1996, within the Eastern District of New York, the defendants JOHN BURKE and DAVID D'ARPINO, together with others, while engaging in and working in furtherance of a continuing criminal enterprise, did knowingly and intentionally kill and cause the intentional killing of an individual, to wit: John Gebert, and such killing did result.

16

45.   The continuing criminal enterprise identified in paragraph 44 involved a continuing series of violations of Subchapter I of Title 21 of the United States Code, which violations were undertaken by the defendant JOHN BURKE, in concert with five or more other persons, including associates of the Gambino crime family, with respect to whom BURKE occupied a position of organizer, supervisor and other position of management, and from which violations BURKE obtained substantial income and resources.

(Title 21, United States Code, Section 848(e)(1)(A); Title 18, United States Code, Sections 2 and 3551 <u>et</u> <u>seq</u>.)

<u>COUNT FOUR</u>
(Using, Carrying and Possessing a Firearm)

46.   In or about and between January 1980 and January 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants JOHN BURKE and DAVID D'ARPINO, together with others, did knowingly and intentionally use and carry one or more firearms during and in relation to a crime of violence, to wit: the crime charged in Count One, and did knowingly and intentionally possess such firearms in furtherance of said crime of violence, which firearms were brandished and discharged.

(Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii), 2 and 3551 <u>et</u> <u>seq</u>.)

17

### COUNT FIVE
(Causing Death Through Use of a Firearm)

47.   On or about July 12, 1996, within the Eastern District of New York, the defendants JOHN BURKE and DAVID D'ARPINO, together with others, in the course of a violation of Title 18, United States Code, Section 924(c), to wit: the crime charged in Count Four, did knowingly and intentionally cause the death of a person through the use of a firearm, which killing is a murder as defined in Title 18, United States Code, Section 1111(a), in that the defendant, together with others, with malice aforethought, did unlawfully kill John Gebert willfully, deliberately, maliciously and with premeditation.

(Title 18, United States Code, Sections 924(j)(1), 2 and 3551 et seq.)

### COUNT SIX
(Witness Tampering Conspiracy)

48.   In or about and between May 2009 and January 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DAVID D'ARPINO and ANGELO RUGGIERO, JR., together with others, did knowingly and intentionally conspire to (1) use physical force and the threat of physical force against a person, to wit: John Doe #3, with intent to (a) prevent the testimony of such person in an official proceeding, to wit: a criminal proceeding before a judge and court of the United States in the Eastern District of New York,

18

(b) cause and induce such person to withhold testimony from said official proceeding, and (c) hinder, delay and prevent the communication to one or more law enforcement officers of the United States, to wit: Special Agents of the Federal Bureau of Investigation, of information relating to the commission and possible commission of one or more Federal offenses, and (2) corruptly obstruct, influence and impede said official proceeding, contrary to Title 18, United States Code, Sections 1512(a)(2)(A), 1512(a)(2)(B)(i), 1512(a)(2)(C) and 1512(c)(2).

(Title 18, United States Code, Sections 1512(k) and 3551 et seq.)

### COUNT SEVEN
(Attempted Witness Tampering)

49.    In or about and between May 2009 and January 2010, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DAVID D'ARPINO and ANGELO RUGGIERO, JR., together with others, did knowingly and intentionally attempt to (1) use physical force and the threat of physical force against a person, to wit: John Doe #3, with intent to (a) prevent the testimony of such person in an official proceeding, to wit: a criminal proceeding before a judge and court of the United States in the Eastern District of New York, (b) cause and induce such person to withhold testimony from said official proceeding, and (c) hinder, delay and prevent the communication to one or more law enforcement officers of the

19

United States, to wit: Special Agents of the Federal Bureau of Investigation, of information relating to the commission and possible commission of one or more Federal offenses, and (2) corruptly obstruct, influence and impede said official proceeding.

(Title 18, United States Code, Sections 1512(a)(2)(A), 1512(a)(2)(B)(i), 1512(a)(2)(C) and 1512(c)(2), 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNT ONE

50.  The United States hereby gives notice to the defendants JOHN BURKE and DAVID D'ARPINO that, upon conviction of Count One, the government will seek forfeiture in accordance with Title 18, United States Code, Section 1963, which requires a defendant, upon conviction of such offense, to forfeit any property:

a.   the defendant has acquired an interest in and maintained in violation of Title 18, United States Code, Section 1962, which interest is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

b.   the defendant has an interest in, security of, claims against and property and contractual rights that afford a source of influence over the enterprise that the defendant and his coconspirators established, operated,

20

controlled, conducted and participated in the conduct of, in

violation of Title 18, United States Code, Section 1962, which

interest, security, claims and rights are subject to forfeiture

to the United States pursuant to Title 18, United States Code,

Section 1963(a)(2); and

    c. the defendant derived from proceeds obtained,

directly and indirectly, from racketeering activity, in violation

of Title 18, United States Code, Section 1962, which property is

subject to forfeiture to the United States pursuant to Title 18,

United States Code, Section 1963(a)(3).

   51. If any of the above-described forfeitable

property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due

diligence;

    b. has been transferred or sold to, or deposited

with, a third party;

    c. has been placed beyond the jurisdiction of

the court;

    d. has been substantially diminished in value;

or

    e. has been commingled with other property which

cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18,

United States Code, Section 1963(m), to seek forfeiture of any

21

other property of the defendant up to the value of the
forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 1963)

CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS FOUR AND FIVE

52. The United States hereby gives notice to the
defendant JOHN BURKE that, upon his conviction of Counts Four or
Five, the government will seek forfeiture in accordance with
Title 18, United States Code, Section 924(d) and Title 28, United
States Code, Section 2461(c), which requires the defendant, upon
conviction of any such offenses, to forfeit any firearms and
ammunition involved in the commission of any such offenses.

53. If any of the above-described forfeitable
property, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due
diligence;

b. has been transferred or sold to, or deposited
with, a third party;

c. has been placed beyond the jurisdiction of
the court;

d. has been substantially diminished in value;
or

e. has been commingled with other property which
cannot be divided without difficulty;
it is the intent of the United States, pursuant to Title 18,

22

F-#20090800579

No. 09 CR 135 (S-5) (SJ)

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL  DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

*JOHN BURKE, DAVID D'ARPINO and ANGELO RUGGIERO, JR.,*

Defendants.

# SUPERSEDING INDICTMENT

(T. 18, U.S.C., §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii), 924(d), 924(j)(1),
1512(a)(2)(A), 1512(a)(2)(B)(i), 1512(a)(2)(C), 1512(c)(2), 1512(k), 1959(a)(1),
1962(d), 1963, 2 and 3551 et seq.; 21 U.S.C. §§ 848(e)(1)(A); T. 28, U.S.C., § 246(c))

A true bill.

_____
_____ *Foreman*

Filed in open court this _____

of _____ A.D. 20 _____ day,

_____
_____ *Clerk*

Bail $ _____

***Taryn A. Merkl**, Assistant U.S. Attorney, (718) 254-6064*
***Jacquelyn M. Rasulo**, Assistant U.S. Attorney, (718) 254-6103*
***Whitman G.S. Knapp**, Assistant U.S. Attorney, (718) 254-6107*

**INFORMATION SHEET**

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 1 8 2010 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

1.      Title of Case: **United States v. John Burke, David D'Arpino and Angleo Ruggiero, Jr.**

2.      Related Magistrate Docket Number(s):
         None (X)

3.      Arrest Date:      **Burke - N/A (already in custody); D'Arpino (already in custody; Ruggiero (already in custody)**

)

4.      Nature of offense(s):   ☒     Felony
                            ☐     Misdemeanor

5.      Related Cases - Title and Docket No(s).  (Pursuant to Rule 50.3 of the Local E.D.N.Y. Division of Business Rules):      _____

     _____

     _____

6.      Projected Length of Trial:     Less than 6 weeks     (X)
                                            More than 6 weeks    ( )

7.      County in which crime was allegedly committed: <u>Queens and others</u>
     (Pursuant to Rule 50.1(d) of the Local E.D.N.Y. Division of Business Rules)

8.      Has this indictment/information been ordered sealed?      ( ) Yes   (X) No

9.      Have arrest warrants been ordered? **(Ruggiero)**      (X) Yes   () No

                               LORETTA E. LYNCH
                               UNITED STATES ATTORNEY

         By:      _____

                               Whitman G.S. Knapp
                               Assistant United States Attorney
                               718-254-6107

Rev. 3/22/01