**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
**UNITED STATES OF AMERICA**

                                                       **09-cr-135 (SJ)**

       - against -

**ANGELO RUGGIERO**

                            **Defendant.**
-----------------------------------------------------------x

## ANGELO RUGGIERO'S PRETRIAL MOTIONS
## AND SUPPORTING MEMORANDUM OF LAW

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

STATEMENT OF FACTS ...................................................................................................... 1

    A.   Introduction ................................................................................................. 1

    B.   Background and Procedural History .......................................................... 1

        1.   Ruggiero's Prior Cases ...................................................................... 1

        2.   The Current Indictment ...................................................................... 3

    C.   The Factual Background for the Witness Tampering Charges .............. 5

ARGUMENT ....................................................................................................................... 9

POINT I: THE GOVERNMENT SHOULD BE COMPELLED TO PRODUCE
        REQUESTED DISCOVERY. ..................................................................... 9

    A.   Evidence Material to Ruggiero's Defense. ............................................ 11

    B.   Evidence that the Government Intends to Introduce in its Case-in-Chief. ........ 13

    C.   Enterprise Proof and Evidence Offered Under Fed. R. Evid. 404(b). ................... 14

POINT II: DEFENDANT IS ENTITLED TO A LIMITED BILL OF PARTICULARS. ........... 14

    A.   Overview of the Law ................................................................................ 14

    B.   Limited Particulars Necessary To Prepare For Trial ............................ 16

POINT III: THE GOVERNMENT SHOULD BE REQUIRED TO PROVIDE A LIST
        OF EXHIBITS THAT IT INTENDS TO OFFER AS EVIDENCE AT TRIAL ....... 17

POINT IV: THE GOVERNMENT IS REQUIRED TO PRESERVE ALL NOTES OF
        LAW ENFORCEMENT AGENTS FROM WITNESS INTERVIEWS. .................. 18

POINT V: DEFENDANT REQUESTS LEAVE TO FILE ADDITIONAL MOTIONS ............ 18

CONCLUSION ................................................................................................................... 19

## TABLE OF AUTHORITIES

CASES

*Brady v. Maryland*, 373 U.S. 83 (1963) ................................................................. 13

*United States v. Barnes*, 158 F.3d 662 (2d Cir. 1998) ........................................ 14

*United States v. Bin Laden*, 92 F. Supp. 2d 225 (S.D.N.Y. 2000) ...................... 15

*United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987) ................................ 14

*United States v. Buckley,* 586 F.2d 498 (5th Cir. 1978) ...................................... 10

*United States v. Cardoso*, 05-cr-563 (LTS), 2006 WL 739836 (S.D.N.Y. Mar. 23, 2006) .......... 10

*United States v. Dames*, 380 F. Supp. 2d 270 (S.D.N.Y. 2005) ......................... 15

*United States v. Davidoff*, 845 F.2d 1151 (2d Cir. 1988) ................................... 16

*United States v. Falkowitz*, 214 F. Supp. 2d 365 (S.D.N.Y. 2002) ............... 15, 17

*United States v. Gibson*, 175 F. Supp. 2d 532 (S.D.N.Y. 2001) ......................... 14

*United States v. Giffen,* 379 F. Supp. 2d 337 (S.D.N.Y. 2004) ........................... 10

*United States v. Lino*, No. 00-cr-632 (WHP), 2001 WL 8356 (S.D.N.Y. Dec. 29, 2000) ........... 14

*United States v. Maniktala,* 934 F.2d 25 (2d Cir. 1991) ..................................... 10

*United States v. Nachamie*, 91 F. Supp. 2d 565 (S.D.N.Y. 2000) ...................... 15

*United States v. NYNEX Corp.,* 781 F. Supp. 19 (D.D.C. 1991) ........................ 10

*United States v. Palermo*, 2001 WL 185132 (S.D.N.Y. Feb. 26, 2001) ............... 17

*United States v. Ruggiero*, 05-cr-196 (SFJ) (E.D.N.Y. 2005) .............................. 1

*United States v. Ruggiero*, 06-cr-305 (SFJ) (E.D.N.Y. 2006) .............................. 1

*United States v. Ruggiero*, 06-cr-985 (LMM) (S.D.N.Y. 2006) ........................... 2

*United States v. Ruggiero*, 08-cr-76 (JBW) (E.D.N.Y. 2008) ............................... 2

*United States v. Ruggiero*, 09-cr-135 (SJ) (E.D.N.Y. 2009) ................................ 4

*United States v. Santiago,* 46 F.3d 885 (9th Cir. 1995) ...................................... 10

*United States v. Stevens,* 985 F.2d 1175 (2d Cir. 1993) ................................................ 10

*United States v. Taylor*, 707 F. Supp. 696 (S.D.N.Y. 1989) ........................................ 18

*United States v. Trevino,* 556 F.2d 1265 (5th Cir. 1977) .............................................. 10

*United States v. Zuno–Arce,* 44 F.3d 1420 (9th Cir. 1995) .......................................... 10

Sᴛᴀᴛᴜᴛᴇs

18 U.S.C. § 1512(a) ......................................................................................................... 5

18 U.S.C. § 1512(b) ......................................................................................................... 5

Rᴜʟᴇs

Fed. R. Crim. P. 16(a)(1)(E) ........................................................................................... 9

Fed. R. Evid. 104 ........................................................................................................... 17

Fed. R.Evid. 404(b) ....................................................................................................... 14

## STATEMENT OF FACTS

**A.     Introduction**

The government created the current racketeering case against Ruggiero by recycling two charges to which Ruggiero previously pled guilty and adding to those charges only a single new crime (attempted witness tampering).  As set forth in detail below, since 2006 when the government charged Ruggiero with the first of the crimes contained in the current indictment, Ruggiero has consistently taken responsibility for his actions in an effort to move forward with his life.  Yet, despite the fact that he has been continuously incarcerated since his arrest in May 2006, the current case is the fourth the government has brought against Ruggiero in as many years.

To provide the Court with the context in which the instant indictment came about, we set forth below (1) a brief history of the prior prosecutions against Ruggiero, (2) relevant procedural history in the instant matter, and (3) the factual background for the witness tampering allegation.

**B.     Background and Procedural History**

**1.     Ruggiero's Prior Cases**

In May 2006, the government indicted Ruggiero in the Eastern District of New York for money laundering and distribution of marijuana.  *United States v. Ruggiero*, 06-cr-305 (SFJ) (E.D.N.Y. 2006).  Several months later, in November 2006, after the government's efforts to entice him to cooperate failed, Exhibit A, Letter from A.U.S.A. Burton Ryan, Jr. to the Honorable Sandra J. Feuerstein, dated March 8, 2006, the government consolidated Ruggiero's case with a preexisting case pending against other individuals charged with the same money laundering and marijuana distribution violations.  *United States v. Ruggiero*, 05-cr-196 (SFJ) (E.D.N.Y. 2005).

1

At about the same time that the government brought the money laundering and marijuana case, the government commenced a separate case in the Southern District of New York in which it charged Ruggiero with extortion related to the marijuana distribution business that it charged in the Eastern District case.  *United States v. Ruggiero*, 06-cr-985 (LMM) (S.D.N.Y. 2006).

The government alleged that the conduct in both cases was related to a criminal enterprise and threatened to supersede with an indictment charging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") if the cases were not resolved.  Thereafter, Ruggiero pled guilty to the extortion charge in the Southern District and in satisfaction of the Eastern District indictment he pled guilty to the money laundering charge.  Because, as noted, the two cases were factually related, pursuant to Fed. R. Crim. P. 20, in 2007, the money laundering case was transferred to the Southern District for sentencing.

Despite Ruggiero's guilty pleas in the money laundering and extortion cases, before Ruggiero was even sentenced for those offenses, in February 2008, the government charged Ruggiero with a RICO violation in yet a third case.  *United States v. Ruggiero*, 08-cr-76 (JBW) (E.D.N.Y. 2008).  Ultimately, Ruggiero resolved that case as well when the government agreed to accept Ruggiero's plea to his participation in a murder conspiracy that was charged as a predicate act and dismissed the RICO charge and remaining predicates.

On January 20, 2009, the Court in the murder conspiracy case imposed a sentence of 84 months imprisonment.  *Ruggiero*, 08-cr-76 (JBW).  Thereafter, on April 9, 2009, the Court in the Southern District imposed concurrent 12-month terms of imprisonment on the money laundering and extortion charges to run consecutive to the attempted murder sentence.  *Ruggiero*, 06-cr-985 (LMM).  Thus, all told, Ruggiero received 96 months imprisonment for the three charges.

2

### 2.       The Current Indictment

The current indictment stems from an investigation in the Middle District of Florida that A.U.S.A. Jay Trezevant spearheaded, which, in 2008, resulted in two companion indictments—neither of which included Angelo Ruggiero.  First, on July 24, 2008, a grand jury in the Middle District of Florida returned an indictment in which it charged John A. Gotti (the "*Gotti* Case") with conspiring to violate the RICO laws through a pattern of activity that included allegations of murder and drug trafficking.

Second, one week later, on July 31, 2008, the grand jury returned a separate indictment in which it charged a number of defendants (the "*Burke* Case") with RICO conspiracy violations that also included allegations of murder and drug trafficking.  Notably, in many instances, the victims of the alleged crimes charged in the two indictments were the same, as were the relevant time periods and geographic locations in which the crimes were alleged to have occurred.

On December 2, 2008, the District Court for the Middle District of Florida ordered the *Gotti* Case transferred to the Southern District of New York.  In the fall of 2009, Trezevant, along with AUSA's from the United States Attorney's Office for the Southern District of New York, tried the *Gotti* Case.  In December 2009, the *Gotti* Case concluded with a deadlocked jury, a mistrial, and a decision by the government to dismiss the indictment.

On January 29, 2009, the Florida grand jury returned a superseding indictment in the *Burke* Case—Ruggiero was still not a defendant.  On March 3, 2009, the District Court in Florida ordered the *Burke* Case transferred to the Eastern District of New York.  Thereafter, the *Burke* Case proceeded in this district and, on December 16, 2009, when only three defendants remained (John Burke, David D'Arpino, and James Cadicamo), a grand jury in this district

3

returned two superseding indictments: one in which Burke and D'Arpino were charged and another in which Cadicamo alone was charged.

On October 21, 2010, a grand jury returned yet another superseding indictment against Burke and D'Arpino that did not include Ruggiero.  At the request of Burke's counsel, the Court declared November 19, 2010 as the final date for any additional superseding indictments.

One day before the deadline, on November 18, 2010, the government filed a superseding indictment in which it added Angelo Ruggiero as a defendant.  At that time, Ruggiero was charged with one count of witness tampering and one count of conspiracy to engage in witness tampering (the "Witness Tampering Charges").  Ruggiero was not added to the RICO conspiracy charge pending against Burke and D'Arpino.

Subsequently, Ruggiero filed a severance motion, and, on March 11, 2011, the Court granted Ruggiero's motion for a separate trial on the ground that the prejudicial spillover he would suffer from being tried with co-defendants charged with RICO violations would impact his right to a fair trial.  *United States v. Ruggiero*, 09-cr-135 (SJ) (E.D.N.Y. 2009), Memorandum and Order, dated March 11, 2011, at 9-10.  Thereafter, the Court set a trial date of November 7, 2011.

On October 13, 2011, however, just three weeks before Ruggiero was scheduled to begin trial, the government manufactured a RICO charge and filed a superseding indictment against Ruggiero.[1]  To create the RICO charge against Ruggiero, the government did nothing more than add to the Witness Tampering Charges two of the crimes to which Ruggiero previously pled guilty and for which he has nearly completed serving his sentence.  Thus, the predicates that the

---

[1] This is the current indictment and it is hereinafter referred to as the "Indictment."

government used to contrive the current RICO charge against Ruggiero are (1) money laundering, (2) attempted murder, and (3) the Witness Tampering Charges.

In addition to charging a RICO violation, the government also changed the subsection of the witness tampering statute under which it charges Ruggiero.  Previously, the government charged Ruggiero under 18 U.S.C. § 1512(a), which requires the use of physical force or the threat of physical force.  Currently, the government is charging Ruggiero under 18 U.S.C. § 1512(b), which does not have as an element the use or threatened use of physical force.

Accordingly, Ruggiero, who has been incarcerated since May 2006 and has served nearly six years of his eight-year sentence, is now preparing to defend against a case comprised of charges for which he has previously accepted responsibility and one that, as demonstrated below, is based entirely on circumstances that the government created.

## C.    The Factual Background for the Witness Tampering Charges

According to the government, beginning in 2009, while incarcerated at the Metropolitan Detention Center in Brooklyn ("MDC"), Ruggiero conspired with co-defendants David D'Arpino and James Cadicamo to tamper with cooperating witness Timothy Angelini.  Exhibit B, Transcript of Proceedings, dated January 11, 2011, ("Jan. 11, 2011 Tr.") at 4-5.  Thereafter, according to the government, Ruggiero continued to participate in the conspiracy when he was transferred to FCI Jesup in Georgia ("Jesup") where Angelini was incarcerated.  Exhibit B, Jan. 11, 2011 Tr. 5.  As made clear below, the government's theory ignores a number of relevant facts.

Following Ruggiero's sentencing on the money laundering, extortion, and attempted murder charges in February 2009, he was incarcerated at the MDC.  Thereafter, in April 2009, D'Arpino and Cadicamo were transferred to the MDC to await trial on the indictment that had

been transferred from the Middle District of Florida.  Notably, while they were in the MDC, D'Arpino and Cadicamo were incarcerated in a different housing unit than Ruggiero.

According to the government, in March 2009—immediately upon or just prior to the arrival of D'Arpino and Cadicamo at the MDC—a conspiracy was formed in which D'Arpino, Cadicamo, Ruggiero, and others agreed to tamper with government witness Timothy Angelini. Exhibit C, Indictment at 9.[2]   Angelini, it seems, was due to provide testimony against Cadicamo for his alleged role in tampering with a different witness.  Accordingly, the government claims that—within days of Cadicamo's arrival at MDC—Ruggiero joined him in a conspiracy to dissuade Angelini from testifying.

Not long after the government alleges that the conspiracy formed, the Bureau of Prisons ("BOP") notified Ruggiero that it had designated FCI Edgefield in South Carolina ("Edgefield") as the institution at which Ruggiero would serve his sentence and that it would soon transfer him there.  Unbeknownst to Ruggiero at the time, the BOP had also designated him to its central inmate monitoring system ("CIM") because, due to Ruggiero's alleged status as a member of the Gambino Family, there were separation orders between Ruggiero and various other inmates. Exhibit D, BOP Documents and Correspondence.

On June 17, 2009 (having been in the same institution as his alleged co-conspirators, D'Arpino and Cadicamo, for less than two months), the BOP removed Ruggiero from the MDC and began his transfer to Edgefield.  Exhibit E, Inmate History Report Re: Ruggiero ("Ruggiero Inmate History").  On July 2, 2009, Ruggiero was incarcerated in a facility in Atlanta en route to Edgefield, Exhibit E, Ruggiero Inmate History, when the BOP re-designated Ruggiero to Jesup reportedly due to a "newly identified CIM concern."  Exhibit F, Email from BOP Official Cory

---

[2] The government has refused to identify when specifically it claims Ruggiero joined the conspiracy, which it alleges spanned the period from March 2009 through January 2010.

Clark to BOP Officials, dated July 2, 2009 ("Clark Email").  In other words, there was an inmate at Edgefield from whom the BOP was required to keep Ruggiero separated.

Ironically, at the time that the BOP designated Ruggiero to Jesup, Angelini—a witness who had been cooperating against alleged members and associates of the Gambino family since 2006, Exhibit G, Memorandum from Warden Anthony Haynes to Associate Warden W.T. Taylor, dated November 16, 2009 ("Haynes Memo"), and thus someone from whom Ruggiero should theoretically have been separated—was incarcerated at Jesup.  Exhibit H, Inmate History Report Re: Angelini ("Angelini Inmate History").  Even more ironic, Ruggiero arrived at Jesup on July 10, 2009 and on July 14, 2009, at Angelini's request, Ruggiero was moved into Angelini's cell.  Exhibit I, Ruggiero Inmate Quarters History (indicates the date of Ruggiero's cell changes but not how or why they came about).

Shortly after they became cellmates, however, it became clear that Angelini had invited Ruggiero into his cell in order to attempt to extract inculpatory statements regarding Gotti, against whom, as discussed above, the government was engaged in a rapidly failing prosecution in the Southern District of New York.

In addition, AUSA Jay Trezevant and FBI Special Agent Mike Bradley, who respectively were the lead prosecutor and lead agent in the Gotti prosecution, were simultaneously working with Angelini in his capacity as a cooperator.  Moreover, Trezevant and Bradley were also involved in the initial stages of the instant case when the indictment was originally returned in the Middle District of Florida.  Thus, it appears that the government intentionally sent Ruggiero to Jesup so that Angelini could interrogate him in an effort to salvage the flagging Gotti prosecution, and not due to a "newly identified CIM concern."

Ruggiero, whose family had long had a close relationship with the Gotti family, was accustomed to queries about Gotti and, therefore, had no reason to suspect that Angelini was a cooperating witness.  Indeed, it was on or about August 7, 2009 when Jesup BOP Officer R. Sumner made a public comment to Ruggiero identifying Angelini as a cooperating witness that Ruggiero learned Angelini's status.

On August 8, 2009, the day after Officer Sumner identified Angelini as a cooperating witness, Angelini was removed from the general population and Ruggiero had no further contact with him.  Exhibit J, Jesup Unit Log Book.  Soon thereafter, on November 16, 2009, Trezevant requested that the BOP transfer Angelini to another BOP facility, Exhibit G, Haynes Memo, and, on December 23, 2009, Angelini was transferred out of Jesup, Exhibit H, Angelini Inmate History.

Despite Trezevant's claim that the transfer was required because Ruggiero had threatened Angelini, Ruggiero was not even charged with a disciplinary infraction.  Exhibit G, Haynes Memo; Exhibit K, Inmate Discipline Data Record Re: Ruggiero ("Ruggiero Discipline Record"). Indeed, Ruggiero was not placed in Jesup's Special Housing Unit and an SIS investigation was not conducted, both of which would have been normal procedure had there been evidence of a death threat.  Moreover, the instant case proceeded over the course of the following year through several superseding indictments in which the government did not charge Ruggiero, and the most recent indictment has dispensed with the allegation that Ruggiero threatened Angelini with physical force.

Then, on November 18, 2010, a year after Trezevant had removed Angelini from Jesup, FBI Special Agent Jeffrey Tarkin came to Jesup, had Ruggiero brought to the Special Housing Unit, and spent approximately an hour and half attempting to convince Ruggiero to cooperate

against Gotti and others or face indictment on unspecified charges.  Exhibit L, Letter from FBI

Supervisory Special Agent Gerard M. Conrad to FCI Jesup Lieutenant Jeffrey Troutman, dated

November 17, 2010.  Ruggiero was given no warning prior to the meeting and though he had

counsel at the time for a related matter, his counsel was not notified.  Exhibit M, BOP Request

for Administrative Remedy, dated December 29, 2010.  As evidenced by the instant prosecution,

Ruggiero declined Tarkin's invitation.

Days later, as noted above, on November 18, 2010, the government superseded the

indictment in the *Burke* Case and added Ruggiero as a defendant charging him with attempted

witness tampering and conspiracy to engage in witness tampering.

## ARGUMENT

### POINT I

### THE GOVERNMENT SHOULD BE COMPELLED TO PRODUCE REQUESTED DISCOVERY.

The materials that Ruggiero seeks are subject to disclosure under Federal Rule of

Criminal Procedure 16(a)(1)(E).  Rule 16 provides in relevant part as follows:

> Upon a defendant's request, the government must permit the defendant to inspect
> and to copy or photograph books, papers, documents, data, photographs, tangible
> objects, buildings or places, or copies or portions of any of these items, if the item
> is within the government's possession, custody, or control and:
>
> (i)     the item is material to preparing the defense;
> (ii)    the government intends to use the item in its case-in-chief at trial;
>         or
> (iii)   the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E).  Ruggiero is entitled to the evidence that he seeks because the

majority of it is material to his defense, Fed. R. Crim. P. 16(a)(1)(E)(i), and the government will

use the remainder in its case-in-chief, Fed. R. Crim. P. 16(a)(1)(E)(ii).

When a defendant claims that he is entitled to disclosure because something is material to his defense, he must make a prima facie showing of materiality:

> [Defendant] bears the burden of making the *prima facie* case for the "materiality" of the evidence she seeks to compel discovery of. *See United States v. Maniktala,* 934 F.2d 25, 28 (2d Cir. 1991) (citing *United States v. Buckley,* 586 F.2d 498, 506 (5th Cir. 1978). **Evidence is material within the meaning of Rule 16 if it "could be used to counter the government's case or to bolster a defense** . . . ." *United States v. Stevens,* 985 F.2d 1175, 1180 (2d Cir. 1993) (internal citations omitted). Put another way, evidence is material if its "pretrial disclosure will enable a defendant to alter significantly the quantum of proof in his favor." *United States v. Giffen,* 379 F. Supp. 2d 337, 342 (S.D.N.Y. 2004) (citations omitted).

*United States v. Cardoso*, 05-cr-563 (LTS), 2006 WL 739836, *1 (S.D.N.Y. Mar. 23, 2006) (ellipsis in quoted material).

As stated in the rule, the government's obligations extend to documents within its possession, custody and control. Fed. R. Crim. P. 16. In this context, documents maintained by the BOP fall within the ambit of Rule 16. *United States v. Giffen*, 379 F. Supp. 2d 337, 343 (S.D.N.Y. 2004) (citing *United States v. Santiago,* 46 F.3d 885, 894 (9th Cir. 1995) (extending Rule 16 obligation to documents possessed by Bureau of Prisons); *United States v. Zuno–Arce,* 44 F.3d 1420, 1427 (9th Cir. 1995) (prosecutor is "deemed to have knowledge of and access to anything in the custody or control of any federal agency participating in the same investigation of the defendant"); *United States v. Trevino,* 556 F.2d 1265, 1272 (5th Cir. 1977) (noting that evidence accessible to the prosecution must be turned over to defendant, even if evidence is not within prosecution's "physical possession"); *United States v. NYNEX Corp.,* 781 F. Supp. 19, 25 (D.D.C. 1991) (holding that prosecution must produce materials possessed by other federal agencies allied with the prosecution)).

A.    **Evidence Material to Ruggiero's Defense**

In the case at bar, the government has access to documents that the BOP maintains, which are material to Ruggiero's defense.  In particular, we seek the following documents, which the government has declined to produce:

1.    Ruggiero's BOP Designation History: We have requested but not received, the specific reasons for each change in designation, the dates on which such changes were made, the length of stay at each facility, and any other documents relevant to those changes, including any reports, email, or other correspondence.

2.    A complete list of all cell assignments for Ruggiero while he was incarcerated at FCI Jesup from in or about July 2009 to in or about January 2010, including but not limited to, the names of the inmates with whom he was housed, the names of the parties that requested any cell assignments and the supporting documents, the reasons for all cell assignments, the dates on which any cell assignments were changed, and any and all documents in connection with such cell assignments.

3.    All documents, including but not limited to SIS reports, related to any investigation of any Bureau of Prisons employee in connection with the disclosure of Timothy Angelini's status as a cooperating witness, including but not limited to any reports, email, or other correspondence, and, in particular, any information requested in this paragraph with respect to Bureau of Prisons employee R. Sumner.

4.    A complete copy of all administrative remedies, SIS reports, disciplinary actions, incident reports, intake and screening forms, 'cop-out' forms, disciplinary records and any other relevant document related to Ruggiero.

As discussed above, the BOP initially designated Ruggiero to FCI Edgefield and changed his designation to FCI Jesup while Ruggiero was en route to Edgefield.  Exhibit F, Clark Email. Following Ruggiero's arrival at Jesup, the BOP placed him in the same unit as Angelini and later approved Angelini's request to move Ruggiero into Angelini's cell.  Subsequently, BOP Officer Sumner indicated to Ruggiero—in Angelini's presence—that Angelini was a cooperating witness.

The BOP documents that bear out these facts are material to Ruggiero's defense because they will enable Ruggiero to counter the government's case and bolster his defense.  In other

words, the fact that the government purposefully changed Ruggiero's designation from Edgefield to Jesup after Ruggiero departed the MDC and no longer had contact with D'Arpino or Cadicamo runs counter to the government's claim that he joined a conspiracy to tamper with Angelini prior to having left the MDC—*i.e.*, while Ruggiero was in the MDC, he could not possibly have known that he would have an opportunity to tamper with Angelini because the government did not designate Ruggiero to Jesup until after he left his alleged co-conspirators. Consequently, the documents reflecting Ruggiero's designations and the reasons for those designations are material to Ruggiero's defense because they will enable him to counter the government's claim on this core issue.

In addition, the fact that Angelini filed paperwork to request Ruggiero as his cellmate also runs counter to the government's case in that it demonstrates that Ruggiero did not seek out Angelini in accordance with a preconceived plan hatched in the MDC—to the contrary, it was Angelini who pursued Ruggiero. Moreover, given his status as a cooperating witness, Angelini would not have requested Ruggiero as a cellmate unless the government had directed him to do so. Thus, the information requested regarding Ruggiero's cell assignments is material to countering the government's case in that it will enable him to demonstrate key issues regarding the timing of his placement with Angelini and the reasons behind it.

The fact that a BOP employee disclosed to Ruggiero Angelini's status as a cooperating witness is plainly material to Ruggiero's defense in that it counter's the government's claim that Ruggiero joined a conspiracy with individuals in the MDC. In addition, the documents that indicate the temporal proximity of the disclosure of Angelini's status as a cooperator to Angelini's removal from the general population at Jesup are material in that they counter the

government's case by demonstrating that Ruggiero did not have an opportunity to join a conspiracy in the limited time between the two events.

The fact that the government immediately placed Angelini in Jesup's Special Housing Unit and subsequently removed him from the facility entirely, Exhibit J, Jesup Unit Log Book; Exhibit G, Haynes Memo, clearly indicates that Angelini communicated that his status as a cooperator had been disclosed. The documents reflecting the government's investigation into the circumstances under which Officer Sumner disclosed Angelini's status as a cooperator will obviously counter the government's case against Ruggiero in that it will demonstrate that the source of any perceived danger to Angelini did not emanate from the conspiracy alleged in the Indictment. Indeed, as reflected in the removal from the indictment of any allegation that Ruggiero threatened Angelini, Trezevant's report that Ruggiero threatened Angelini's life has obviously been determined to be inaccurate.

For the foregoing reasons, we, therefore, request that the Court compel the government to produce the requested documents because they are material to Ruggiero's defense.

In addition to the reasons stated above, Ruggiero is also entitled to the requested material under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny because it is exculpatory.

**B.** **Evidence that the Government Intends to Introduce in its Case-in-Chief**

As discussed above, Rule 16 requires the government to produce any documents that it intends to introduce in its case-in-chief. Fed. R. Crim. P. 16(a)(1)(E)(ii). In accordance with that requirement, we have requested—but the government has declined to produce—copies of cooperation agreements and proffer agreements that it has entered with its cooperating witnesses.

The government routinely offers cooperation and proffer agreements in evidence in its case-in-chief, and those documents are, therefore, subject to the provisions of Rule 16 and must

be produced.  Accordingly, we request that the Court compel the government to produce the requested documents.

**C.**  **Enterprise Proof and Evidence Offered Under Fed. R. Evid. 404(b)**

We request that the Court set a timetable for the production of "Enterprise Proof" and evidence intended to be offered under any exception to Federal Rule of Evidence 404(b) to provide Ruggiero with sufficient time to make appropriate motions and to prepare for trial.

In addition, the government should be required to specify whether it intends to offer evidence under Rule 404(b) on its direct case or on cross-examination should defendant elect to take the witness stand on his own behalf.

It is respectfully requested that this information is needed so that defendant may make any necessary *in limine* motions prior to trial and thereby avoid undue delay during the trial itself.

## POINT II

### DEFENDANT IS ENTITLED TO
### A LIMITED BILL OF PARTICULARS.

**A.**  **Overview of the Law**

As detailed below, the limited particulars we seek are necessary to specify "the nature of the charges" to enable defendant to "prepare for trial," prevent unfair "surprise" and plead "double jeopardy" if faced with a second prosecution "for the same offense." *United States v. Gibson*, 175 F. Supp. 2d 532, 536 (S.D.N.Y. 2001) (citing *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987)).  Under these circumstances, compliance is "required" even if it incidentally reveals "the Government's evidence or theories." *United States v. Lino*, No. 00-cr-632 (WHP), 2001 WL 8356, *3 (S.D.N.Y. Dec. 29, 2000) (citing *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998)).

This is especially so given (1) the expansive nature of the charged conspiracy and the volume of discovery that the government produced, and (2) the case's overall complexity.  *See, e.g., United States v. Falkowitz*, 214 F. Supp. 2d 365, 390-92 (S.D.N.Y. 2002) (analyzing these factors on particulars application); *United States v. Nachamie*, 91 F. Supp. 2d 565, 570-72 (S.D.N.Y. 2000) (same); *Bortnovsky*, 820 F.2d at 575 (government did "not fulfill its obligations merely by providing mountains of documents to defense counsel who were left unguided").  As Judge Sand has aptly noted, "[i]t is no solution to rely solely on the quantity of information disclosed by the government; sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars."  *United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000).

In 1966, the federal rules eliminated the requirement that a Court find "cause" before directing the filing of a bill of particulars.  "That condition was eliminated to encourage a more liberal attitude by the courts towards bills of particulars without taking away the discretion which courts must have in dealing with such motions in individual cases.'"  *Bin Laden*, 92 F. Supp. 2d at 232 (citing, Fed. R. Crim. P. 7(f) advisory committee's note).

Though "[t]he decision of whether to grant a bill of particulars rests within the sound discretion of the Court," *United States v. Dames*, 380 F. Supp. 2d 270 (S.D.N.Y. 2005); *Bin Laden*, 92 F. Supp. 2d at 233, "[i]n exercising that discretion, the court must examine the totality of the information available to the defendant—through the indictment, affirmations, and general pre-trial discovery—and determine whether, in light of the charges that the defendant is required to answer, the filing of a bill of particulars is warranted."  *Bin Laden*, 92 F. Supp. 2d at 233.

The need for a bill of particulars to protect a defendant's rights is especially acute in a RICO case:

15

> These principles must be applied with some care when the Government charges criminal offenses under statutes as broad as RICO. With the wide latitude accorded the prosecution to frame a charge that a defendant has "conspired" to promote the affairs of an "enterprise" through a "pattern of racketeering activity" comes an obligation to particularize the nature of the charge to a degree that might not be necessary in the prosecution of crimes of more limited scope.

*United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988). As noted, the instant case charges a RICO violation spanning ten years. Accordingly, we respectfully suggest that the limited particulars set forth below should be provided in light of the complexity and expansive nature of the Indictment.

**B.      Limited Particulars Necessary To Prepare For Trial**

As discussed in detail above, the government alleges a witness tampering conspiracy that extended from March 2009 through January 2010. D'Arpino and Cadicamo (Ruggiero's alleged co-conspirators) arrived at the MDC in late March or early April 2009, and Ruggiero left the MDC in June 2009. As previously noted, when Ruggiero left the MDC, he did not know that he was headed to Jesup where Angelini was incarcerated. Accordingly, it is critical for Ruggiero to know the date on which the government alleges that he joined the conspiracy so that he can focus his defense on the period in which the government alleges that he was involved.

Despite the substantial volume of discovery that the government has provided, the information that we seek is not contained in anything provided thus far. Moreover, we are aware of no principled reason to warrant withholding this information. Accordingly, we respectfully request that the Court direct the government to provide the information to enable Ruggiero to prepare for trial.

**POINT III**

**THE GOVERNMENT SHOULD BE REQUIRED
TO PROVIDE A LIST OF EXHIBITS THAT IT
<u>INTENDS TO OFFER AS EVIDENCE AT TRIAL</u>.**

It is within the Court's discretion to order the government to produce an exhibit list prior to trial. *Falkowitz*, 214 F. Supp. 2d at 392-93. It is an appropriate exercise of such discretion where the Court finds that "the interests of justice and fair play" mediate in favor of requiring the government to produce an exhibit list to afford the defendant a fair trial. *Id.*

In *United States v. Palermo*, 2001 WL 185132 (S.D.N.Y. Feb. 26, 2001), the Court recognized that the exercise of the Court's discretion in this regard is particularly appropriate when dealing with voluminous audio recordings:

> [T]he case of audio tapes (particularly when accompanied by transcripts to be used as aids in listening to the tapes) presents something of a special problem. . . . Where transcripts of tapes are used, a defendant needs to have a reasonable opportunity to compare draft transcripts with the tapes and, if there are disagreements as to transcription, to prepare alternate transcripts if the defendant chooses to do so.

*Id.*

Here, the government has produced extensive recordings and thus far has not indicated which, if any, it intends to offer at trial. In order to enable Ruggiero to raise any issues regarding the admissibility of any recording, the accuracy of any transcript, or the audibility of any recording, it is necessary for the government to identify which recordings it will seek to introduce at trial.

Accordingly, under Fed. R. Evid. 104 and other applicable law, Ruggiero requests that the Court order the government to provide a list of recordings and transcripts that it intends to introduce as evidence in its direct case. This production is necessary to enable Ruggiero to review the designated conversations and verify the accuracy of the government's transcripts.

Designation of the recordings intended to be introduced at trial is also necessary to enable Ruggiero to determine whether any *in limine* motions are necessary with respect to any such recordings and to request an audibility hearing if required.

Accordingly, we request that the government provide a list of recordings on a rolling basis commencing immediately.  We additionally request that the government provide a list of its other trial exhibits 30 days in advance of trial.

## POINT IV

### THE GOVERNMENT IS REQUIRED TO PRESERVE ALL NOTES OF LAW ENFORCEMENT AGENTS FROM WITNESS INTERVIEWS.

The government is obligated to preserve for trial handwritten notes made by law enforcement agents during witness interviews.  *United States v. Taylor*, 707 F. Supp. 696, 707 (S.D.N.Y. 1989).  Accordingly, Ruggiero requests that the government be ordered to do so.

## POINT V

### DEFENDANT REQUESTS LEAVE TO FILE ADDITIONAL MOTIONS.

Ruggiero has made a good faith effort to raise all issues known to him at this time.  If, however, additional issues become known, we request leave to file further pretrial motions.  In this regard we note that we are still in the process of reviewing the discovery in this case. Therefore, in the interests of justice we respectfully request that Ruggiero be afforded the opportunity to file additional motions if necessary.

## CONCLUSION

For the foregoing reasons, Ruggiero respectfully requests that the Court enter an order

granting the requested relief along with such other and further relief that the Court deems proper.

Dated: February 10, 2012
       New York, New York

<div style="margin-left:40%">

Respectfully Submitted,


_____/s/_____
Seth Ginsberg[3]
Attorney at Law
5 Hanover Square, Suite 500
New York, NY 10004
(212) 537-9202
srginsberg@mac.com

Charles F. Carnesi
Attorney at Law
1225 Franklin Avenue, Suite 325
Garden City, NY 11530
(516) 512-8914
cfcarnesi49@aol.com

*Attorneys for Angelo Ruggiero*

</div>

---

[3] In accordance with Local Criminal Rule 16.1, I hereby affirm that I have conferred with opposing counsel in a good faith effort to resolve the issues raised herein but we have been unable to do so.