NMA:JMK/WK
F.#2009R00579

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -                  09 CR 135 (S-6) (SJ)

ANGELO RUGGIERO, JR.,

           Defendant.

- - - - - - - - - - - - - - - -X


MEMORANDUM OF LAW IN OPPOSITION TO ANGELO
RUGGIERO, JR.'s FEBRUARY 10, 2012 PRE-TRIAL MOTIONS

LORETTA E. LYNCH
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201


Jacquelyn M. Kasulis
Whitman G.S. Knapp
Assistant United States Attorneys
    (Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in opposition to defendant Angelo Ruggiero, Jr.'s pre-trial motion and memorandum of law dated February 10, 2012 ("Def. Mem.").

In his motion, the defendant moves for: (a) the production of discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure ("Rule 16") and Brady v. Maryland, 373 U.S. 83 (1963) (Def. Mem. at 9-14); (b) a bill of particulars (id. at 14-16); (c) a list of trial exhibits (id. at 17-18); (d) the preservation "for trial of handwritten notes made by law enforcement agents during witness interviews" (id. at 18); and (e) leave to file additional motions (id.).

As set forth below, the government has complied and will continue to comply with its obligations pursuant to Rule 16 and Brady.  Accordingly, there is no need for the Court to compel the government to provide discovery or any other materials to the defendant.  Additionally, the defendant's demand for a bill of particulars and remaining requests are without merit and should be denied in their entirety.

BACKGROUND

On November 18, 2010, a grand jury sitting in the Eastern District of New York returned a fifth superseding indictment ("S-5 Indictment") against Ruggiero and two co-

defendants, John Burke and David D'Arpino.[1]  The S-5 Indictment
charged Ruggiero, a soldier in the Gambino crime family of La
Cosa Nostra (the "Gambino family"), with witness tampering
conspiracy and attempted witness tampering of John Doe #3 between
May 2009 and January 2010.  It also charged Burke and D'Arpino
with racketeering conspiracy; murder in-aid-of racketeering; the
murder of John Gebert while engaging in and working in
furtherance of a continuing criminal enterprise; using, carrying
and possessing a firearm in relation to the racketeering
conspiracy charge; and causing the death of John Gebert through
the use of a firearm.  Ruggiero moved for severance from his co-
defendants and, on March 11, 2011, the Court granted Ruggiero's
motion.

On October 13, 2011, a grand jury sitting in the
Eastern District of New York returned a one-defendant sixth
superseding indictment (S-6) ("the Indictment"), charging
Ruggiero with racketeering, in violation of 18 U.S.C. § 1962(c)
(Count One), including predicate acts of money laundering
conspiracy (Racketeering Act ("RA") 1), murder

_____

[1]     The case was originally brought in the Middle District
of Florida, Tampa Division, where on July 31, 2008, a federal
grand jury returned an indictment charging Ruggiero's former
co-defendant, John Burke, with racketeering conspiracy, in
violation of 18 U.S.C. § 1962(d).  The case, to which Ruggiero's
former co-defendant David D'Arpino had been added in a
superseding indictment in that district, was transferred to the
Eastern District of New York on March 3, 2009.

conspiracy/attempted murder of John Doe #1 (RA 2) and witness
tampering conspiracy/witness tampering of John Doe #2 (RA 3);
witness tampering conspiracy, in violation of 18 U.S.C. § 1512(k)
(Count Two); and witness tampering, in violation of 18 U.S.C.
§§ 1512(b) and 1512(c) (Count Three).[2]

More specifically, RA 1 alleges money laundering, which
relates to Ruggiero's involvement in a marijuana distribution
conspiracy from approximately 2001 to 2005.[3]  RA 2 alleges murder
conspiracy/attempted murder, which relates to Ruggiero's
involvement in an unsuccessful attempt to murder John Doe #1 in

---

[2]      The defendant asserts that the Indictment has been
"manufactured" and "contrived," suggesting some impropriety
because the Indictment alleges a racketeering charge comprised of
two racketeering acts to which Ruggiero previously pleaded guilty
as substantive crimes in other cases, along with one previously
uncharged racketeering act.  The government respectfully submits
that any such assertion is baseless and should be ignored.  The
defendant does not – because he cannot – present any double
jeopardy claim.  Further, the racketeering count is a charge
separate and distinct from the charges to which Ruggiero
previously pleaded guilty in that racketeering is a charge that
is comprised of more elements than the predicate acts alleged
within it.  See, e.g., United States v. Quinones, 511 F.3d 289,
314-15 (2d Cir. 2007) (outlining elements required to establish a
racketeering violation above and beyond those necessary to
establish predicate racketeering acts).

[3]      On October 25, 2007 in the Southern District of New
York, Ruggiero pleaded guilty to a money laundering conspiracy
charge related to Ruggiero's participation in a marijuana
distribution conspiracy.  United States v. Ruggiero, 07-CR-927
(LMM) (S.D.N.Y.).  Ruggiero also pleaded guilty to an extortion
conspiracy charge.  Ruggiero was sentenced to 12 months'
imprisonment.

approximately April and May 2003.[4]  The witness tampering
conspiracy and witness tampering charges arise from recent
efforts by Ruggiero and Gambino family associates David D'Arpino
and James Cadicamo to tamper with a cooperating witness, John Doe
#2, in order to prevent John Doe #2 from testifying against
Cadicamo.[5]

<u>ARGUMENT</u>

I.   The Government Has Complied and Will Continue to
     <u>Comply with its Disclosure Obligations</u>

        The defendant asserts that the following documents
(a) are material to his defense, (b) have been maintained by the
United States Bureau of Prisons ("BOP"), and (c) the government
"has declined to produce" them:

>    1.   Ruggiero's BOP Designation history
>         [including] specific reasons for each
>         change in designation, the dates on
>         which such changes were made, the length
>         of stay at each facility, and any other
>         documents relevant to those changes,
>         including any reports, email, or other
>         correspondence.

---

        [4]    On July 7, 2008 in the Eastern District of New York,
Ruggiero pleaded guilty to murder conspiracy in-aid-of
racketeering in relation to the attempted murder of John Doe #1.
<u>United States v. Ruggiero</u>, 08-CR-076 (JBW) (E.D.N.Y.).  Ruggiero
was sentenced to 84 months' imprisonment, to run consecutive to
his 12-month sentence from his 2007 case in the Southern District
of New York.

        [5]    On May 17, 2010, in <u>United States v. Cadicamo</u>,
09-CR-135 (S-3) (SJ) (E.D.N.Y.), Cadicamo pleaded guilty to
racketeering conspiracy and racketeering charges.  On October 29,
2010, the Court sentenced Cadicamo to 105 months' imprisonment.

2.   A complete list of cell assignments for
     Ruggiero while he was incarcerated at
     FCI Jesup . . . including but not
     limited to the names of the inmates with
     whom he was housed, the names of the
     parties that requested any cell
     assignments and the supporting
     documents, the reasons for all cell
     assignments, the dates on which any cell
     assignments were changed and any and all
     documents in connection with such cell
     assignments.

3.   All documents, including but not limited
     to SIS reports, related to any
     investigation of any Bureau of Prisons
     employee in connection with the
     disclosure of Timothy Angelini's status
     as a cooperating witness, including but
     not limited to any reports, email, or
     other correspondence and, in particular,
     any information requested in this
     paragraph with respect to Bureau of
     Prisons employee R. Sumner.

4.   A complete copy of all administrative
     remedies, SIS reports, disciplinary
     actions, incident reports, intake and
     screening forms, "cop out" forms,
     disciplinary records and other relevant
     document related to Ruggiero.

(Def. Mem. at 11).

Ruggiero speculates, without providing any factual
basis, that an Assistant United States Attorney ("AUSA") in the
Middle District of Florida and a Special Agent from the Federal
Bureau of Investigation ("FBI") arranged for Ruggiero to be
transferred to a cell at a prison with another inmate, Timothy
Angelini, to whom the AUSA and the agent hoped Ruggiero would
make inculpatory statements regarding John Gotti, Jr.  (Id. at 5-

9).  Based on this speculation, the defendant asserts that the government is obligated to produce the four sweeping categories of documents listed above because the "majority . . . is material to his defense" and because "the government will use the remainder in its case-in-chief."  (Id. at 9).  The defendant contends that the government's purported obligation arises under Rule 16 (id. at 9-10) and Brady v. Maryland, 373 U.S. 83 (1963), and its progeny (id. at 13).

As set forth below, the government has produced the documents it has received from the BOP that fall within the categories listed above that it is obligated to produce pursuant to Rule 16 and Brady.  Accordingly, the defendant's request that the Court order the government to provide these materials in discovery is without merit.

    A.   Legal Standard

Rule 16(a)(1)(E) requires the government to disclose documents or other tangible objects if they are material to the preparation of the defense, the government intends to offer them as evidence in its case-in-chief, or if they were obtained from or belong to the defendant.  See United States v. Maniktala, 934 F.2d 25, 28 (2d Cir. 1991).  A document is material under Rule 16 if "it could be used to counter the government's case or to bolster a defense."  United States v. Stevens, 985 F.2d 1175, 1180 (2d Cir. 1993) (internal citations omitted).  Evidence is

6

also material if its "pretrial disclosure will enable a defendant to alter significantly the quantum of proof in his favor." United States v. Giffen, 379 F. Supp. 2d 337, 342 (S.D.N.Y. 2004) (citations omitted).  "'Defense' means 'the defendant's response to the government's case in chief,' encompassing only items 'which refute the government's arguments that the defendant committed the crime charged.'"  United States v. Defrietas, Cr. No. 07-543 (DLI), 2011 WL 317964, at *9 (E.D.N.Y. Jan. 31, 2011), quoting United States v. Armstrong, 517 U.S. 456, 462 (1996) (interpreting predecessor to Rule 16(a)(1)(E)).

B.   Argument

1.   The Government Has Produced BOP Materials Pursuant to Rule 16 and Brady

Even though the defendant has not established that the sprawling categories of materials listed above are material to his defense,[6] the government has nonetheless produced the documentation it has received from the BOP that would fall within the categories of documents Ruggiero requests pursuant to the government's disclosure obligations as set forth in Rule 16 and Brady.

---

[6]   "It is the defendant's burden to show that the documents sought are material to preparing his defense . . . . Conclusory allegations are insufficient for this purpose." Defrietas, 2011 WL 317964, at *9, citing Giffen, 379 F. Supp. 2d at 342.

Prior to the filing of the defendant's motion, the government requested that the BOP provide it with any and all documents contained in Ruggiero's Central File.  The government subsequently produced to the defendant all the materials that the BOP provided in response to that request.  These include, but are not limited to, documents regarding: the defendant's placement at and transfer between different BOP facilities; his security designation; visitor lists; intake, unit admission and orientation documentation from FCI Jesup; disciplinary records; a form requesting medical attention; emails regarding the defendant's BOP designation and separation orders; memoranda regarding Ruggiero's separation from inmate Timothy Angelini; and Ruggiero's Central Inmate Monitoring System classification.  (See December 30, 2011 discovery letter, Docket No. 88, Box 88).

In addition, the government requested that the BOP provide visitor and unit logs for the period of time Ruggiero was housed at FCI Jesup, and has produced the materials that the BOP provided in response.  (Id. at Boxes 89-91).  The government has also produced a schematic of the housing unit at FCI Jesup where Ruggiero was housed.  (Id. at Box 92).

Finally, the government requested that the BOP provide all movement/location records for Ruggiero, and has produced to the defendant those documents provided to the government by the

8

BOP. (<u>See</u> February 9, 2011 discovery letter, Docket No. 195, Box 62).

In his motion, without any legal or factual basis, the defendant suggests that the government "has access to," and thus is obligated to (a) independently investigate the existence of any BOP documents regarding Ruggiero that the BOP has not provided to the government, and (b) produce any such documents. (Def. Mem. at 10).  To the contrary, "prosecutor[s] need not . . . produce documents from agencies that[,]" as here, "did not participate in the investigation of the defendant . . . ." <u>Giffen</u>, 379 F. Supp. 2d at 343, citing <u>United States v. Avellino</u>, 136 F.3d 249, 255 (2d Cir. 1988) (declining to impose an unlimited duty to inquire of other offices not working with prosecutor's office on the case, because to do so would be to adopt a "monolithic view of the government" that ultimately would lead to prosecutorial paralysis).  "In other words, the prosecutor is not required to conduct a separate investigation for the purpose of responding to a defendant's discovery requests." <u>Id</u>.  If the defendant believes there are additional materials or categories of documents that exist within the BOP, of which the government is unaware, he may seek a Rule 17(c) subpoena for such documents.  <u>See</u> <u>United States v. Dupree</u>, Cr. No. 10-627 (KAM), 2011 WL 20062951, at *3 (E.D.N.Y. May 13, 2011)

9

(laying out standards and requirements for the issuance of such a subpoena).

In short, the government has produced to the defendant the materials it has received from the BOP in full compliance with Rule 16 and its <u>Brady</u> obligations.  The government will continue to provide discovery to the defendant to the extent it obtains additional materials.  Accordingly, there is no need – and it would serve no purpose – for the Court to compel the government to provide additional discovery or materials to the defendant.

>    2.    The Government Need Not Produce Cooperation
>          and Proffer Agreements

Under the guise of requesting cooperation agreements and proffer agreements pursuant to Rule 16 (Def. Mem. at 13-14),[7] the defendant requests early disclosure of the identities of any actual or potential cooperating witnesses for the government.  As a general rule, defendants in criminal cases have no pretrial right to such information.  It is axiomatic that the prosecution has no general duty to disclose the identity of its witnesses in advance of trial.  <u>See</u>, <u>e.g.</u>, <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559-60 (1977); <u>United States v. Bejasa</u>, 904 F.2d 137, 139

---

[7]    Such agreements are not discoverable pursuant to Rule 16.  <u>See</u> <u>United States v. Rogers</u>, Cr. No. 90-377 (CSH), 1991 WL 90797 (S.D.N.Y. May 21, 1991) (declining to require the government to produce cooperation agreements before trial despite the defendant's arguments that they constituted Rule 16 and <u>Brady</u> material).

(2d Cir. 1990).  A defendant may obtain pretrial disclosure of
the identities of witnesses under some circumstances where the
defendant has made "'a <u>specific</u> showing that disclosure was both
material to the preparation of [the] defense and reasonable in
light of the circumstances surrounding [the] case.'"  <u>Bejasa</u>, 904
F.2d at 139-40 (emphasis and alterations in original) (quoting
<u>United States v. Cannone</u>, 528 F.2d 296, 301 (2d Cir. 1975)).  As
the defendant has made no such showing here, the defendant's
request for the disclosure of the identity of the government's
actual and potential cooperating witnesses via proffer and
cooperation agreements should be denied.

> 3.   <u>Rule 404(b) Evidence</u>

The defendant also requests notice of the evidence that
the government will seek to admit pursuant to Federal Rule of
Evidence 404(b) ("Rule 404(b)") with "sufficient time to make
appropriate motions and prepare for trial."  (Def. Mem. at 14).[8]

Rule 404(b) requires the government to provide a
defendant with "reasonable notice in advance of trial, or during
trial if the court excuses pretrial notice on good cause shown,"
of "[e]vidence of other crimes, wrongs, or acts" where offered

---

[8]   The defendant also requests notice of what it vaguely
terms "enterprise proof." (Def. Mem. at 14).  Notably, the
defendant does not define "enterprise proof" in his submission.
Regardless of the defendant's definition of "enterprise proof,"
the government has produced and will continue to produce
materials in accordance with Rule 16 and <u>Brady</u> regarding the
charges in the Indictment, including the racketeering charge.

for such purposes as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b).[9]  The government is aware of its obligation to provide reasonable notice of Rule 404(b) evidence, and will provide sufficient notice so that any issues related to that evidence can be appropriately addressed.[10]

## II.  The Defendant Has Not Established His Need for a Bill of Particulars

Ruggiero also moves for a "limited bill of particulars," requesting specifically "the date on which the

---

[9]     Courts in the Second Circuit have repeatedly interpreted the "reasonable notice in advance of trial" requirement of Rule 404(b) to require disclosure two weeks prior to trial. See, e.g., United States v. Heredia, Cr. No. 02-1246 (SWK), 2003 WL 21524008, at *10 (S.D.N.Y July 3, 2003) ("It has been the practice of courts in this circuit to deem notice afforded more than ten working days before trial as 'reasonable' within the meaning of Rule 404(b)."); United States v. Silberstein, Cr. No. 02-800 (SWK), 2003 WL 21488024, at *7 (S.D.N.Y. June 27, 2003) (government to provide notice of its Rule 404(b) evidence no later than two weeks prior to the commencement of trial); see also United States v. Kelly, 91 F. Supp. 2d 580, 584 (S.D.N.Y. 2000) (approving government's proposal to provide Rule 404(b) material two weeks prior to commencement of trial while reserving the right to provide notice during trial in the event new material arose and the court excused pretrial notice).

[10]     The defendant asserts that "the government should be required to specify whether it intends to offer [its] 404(b) evidence on its direct case or on cross-examination should the defendant elect to take the witness stand on his own behalf." (Def. Mem. at 14).  The defendant, however, provides no legal authority to support its position that the government be forced to identify the circumstances under which it intends to offer its Rule 404(b) evidence, and the government does not know of any. Accordingly, the request should be denied.

government alleges that [Ruggiero] joined the [witness tampering] conspiracy so that he can focus his defense on the period in which the government alleges he was involved." (Def. Mem. at 9). As set forth below, the defendant's motion is without merit and should be denied.

    A.   <u>Legal Standard</u>

An indictment need only set forth a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c). It must "contain[] the elements of the offense intended to be charged, and sufficiently apprise[] the defendant of what he must be prepared to meet." <u>Russell v. United States</u>, 369 U.S. 749, 763 (1962) (internal quotation marks omitted). An indictment must also be sufficiently detailed to guard against double jeopardy. <u>United States v. Tramunti</u>, 513 F.2d 1087, 1113 (2d Cir. 1975). Lastly, the charges must contain sufficient factual detail "to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." <u>United States v. Walsh</u>, 194 F.3d 37, 44 (2d Cir. 1999) (internal quotation marks omitted).

In practice, an indictment satisfies the requirements of Rule 7(c) if it "do[es] little more than . . . track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." <u>Tramunti</u>, 513 F.2d at

13

1113; Alfonso, 143 F.3d at 776 (2d Cir. 1998).  The Second Circuit has "repeatedly refused, in the absence of any showing of prejudice, to dismiss . . . charges for lack of specificity." United States v. McClean, 528 F.2d 1250, 1257 (2d Cir. 1976).

Additional details, in the form of a bill of particulars, see Fed. R. Crim. P. 7(f), are appropriate only when the indictment is too vague to inform the defendant of the nature of the charges to allow the preparation of a defense, avoid unfair surprise and assert a double jeopardy claim.  See United States v. Chen, 378 F.3d 151, 163 (2d Cir. 2004); Walsh, 194 F.3d at 47; United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990) (bill of particulars required "only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused" (internal quotation marks omitted)).  Indeed, "[r]equests in these categories are routinely denied." United States v. Gammarano, Cr. No. 06-0072 (CPS), 2007 WL 207735, at *10 (E.D.N.Y. Jul. 18, 2007).

Neither the Federal Rules of Criminal Procedure nor the Second Circuit requires that the government "particularize" its evidence, and a bill of particulars is required only when the charges in the indictment are so general that they fail to apprise the defendant of the specific acts of which he is accused.  See Torres, 901 F.2d at 234.  If the information sought by the defendant is provided in the indictment or through some

14

other means, a bill of particulars is not warranted.  See Chen, 378 F.3d at 163; Walsh, 194 F.3d at 47; Torres, 901 F.2d at 234; United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987); United States v. Urso, 369 F. Supp. 2d 254, 271 (E.D.N.Y. 2005).

Indeed, it is inappropriate to use Rule 7(f) to limit the government's evidence or flush out its prosecutorial theories in advance of trial.  See Urso, 369 F. Supp. 2d at 272 ("As a general rule, a defendant is not entitled to receive details of the government's conspiracy allegations in a bill of particulars."); see also United States v. Ianniello, 621 F. Supp. 1455, 1478 (S.D.N.Y. 1985) ("To require most of the further disclosure the defendants seek would do little more than restrict the government's proof at trial, which is not the purpose of a bill of particulars."); United States v. Albunio, Cr. No. 91-0403 (ILG), 1992 WL 281037, at *2 (E.D.N.Y. Sept. 9, 1992) ("The defendant's right to know the crime with which he is charged must be distinguished from his right to know the evidentiary details by which proof of his culpability will be established.").  The ultimate test of the appropriateness of a bill of particulars is whether the information is necessary, not whether it is helpful to the defendant.  See United States v. Aliperti, 867 F. Supp. 142, 148 (E.D.N.Y. 1994); United States v. Weinberg, 656 F. Supp. 1020, 1029 (E.D.N.Y. 1987).

Specifically, a defendant is not entitled to discover, through a bill of particulars, the exact times and places at which the crime occurred or the identities of the documents and witnesses that will establish the crime charged.  See Tramunti, 513 F.2d at 1113; United States v. Carroll, 510 F.2d 507, 509 (2d Cir. 1975).  In addition, a defendant is not entitled to detailed evidence as to how, when, where or with whom an alleged conspiracy took place.  See United States v. Cephas, 937 F.2d 816, 823 (2d Cir. 1991); United States v. Feola, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), aff'd, 875 F.2d 857 (2d Cir. 1989).

B.   Analysis

Contrary to Ruggiero's claim (Def. Mem. at 14-16), the allegations in the Indictment, as well as information provided to the defendants in correspondence and discovery, set forth sufficient facts for Ruggiero to prepare his defense, avoid surprise and assert a double jeopardy claim.

Here, the Indictment sets forth the racketeering charge (and the charged predicate racketeering acts) and the witness tampering counts as required – namely, in a clear, concise statement that includes the essential facts of the offenses.  In addition, in a November 22, 2010 Curcio letter in which the government notified the Court and the defendant of a potential attorney conflict of interest (November 22, 2010 Curcio Letter, Docket No. 28) (the "Curcio Letter"), the government provided

16

additional detail regarding the witness tampering charges.  The

<u>Curcio</u> Letter specified, among other things:

> The witness tampering conspiracy and
> attempted witness tampering charges arise
> from recent efforts by D'Arpino, Ruggiero,
> and James Cadicamo, while incarcerated
> together at the Metropolitan Detention
> Center, to intimidate a cooperating witness
> (John Doe #3) in order to prevent John Doe #3
> from testifying against Cadicamo in this
> matter.[11]

(<u>Curcio</u> Letter at 2).  In addition, the government has provided

Ruggiero with discovery that includes wiretap recordings,

recordings of prison telephone calls, and BOP records, including

those set forth above, which provides further detail regarding

the charges contained in the Indictment.  Accordingly, Ruggiero's

motion for a bill of particulars should be denied.

III. The Defendant's Demands for the Government's Trial
     Exhibits Are Premature

     The defendant demands that the government be ordered to

provide a list of recordings and transcripts "commencing

immediately," and "a list of its other trial exhibits 30 days in

advance of trial."  (Def. Mem. at 17-18).  Ruggiero relies on

---

[11]    The <u>Curcio</u> Letter addressed the previous indictment, in
which Ruggiero was charged along with co-defendants Burke and
D'Arpino.  In the pending Indictment, Ruggiero is charged with
witness tampering conspiracy and witness tampering (instead of
attempted witness tampering, as charged in the previous
indictment) and the victim is identified as John Doe #1 (instead
of John Doe #3, as set forth in the previous indictment).
Regardless, the witness tampering charges alleged in the current
Indictment address the same conduct and cooperating witness, as
those in the previous indictment.

<u>United States v. Palermo</u>, Cr. No. 99-1199 (LMM), 2001 WL 185132 (S.D.N.Y. June 26, 2001), for the proposition that early disclosure is particularly appropriate in cases involving voluminous audio recordings.  <u>Id</u>. at 17.  Ruggiero fails to note, however, that in <u>Palermo</u>, the court concluded that "[t]he government, as a general rule, is under no obligation to identify in advance the exhibits it will offer at trial" (<u>Palermo</u>, 2001 WL 185132, at *1), and declined to issue the order requested by the defendants.  Instead, the court accepted the government's representation that it would make pretrial disclosure of those recordings it intended to offer, along with draft transcripts, "in sufficient time to allow orderly trial preparation by all parties, including any challenges to audibility or the like," and indicated that it would set a schedule as to tapes "at a later time."  <u>Id</u>. at *2.  The government has provided the defendant with recordings and transcripts on an ongoing basis (<u>see</u>, <u>e.g.</u>, Discovery Letters, Docket Nos. 33, 145, 161, 260 and 261), and will provide any additional transcripts to the defendant when they become available to the government.

The government will provide transcripts of recordings it intends to use in this trial with ample time for the defendant to review them for accuracy or challenge the audibility of the underlying recordings.  In accordance with its standard practice in this district, the government will provide the defendant with

18

a working copy of its exhibit list to the defense approximately one week in advance of trial, and requests that the Court order the defendant to do the same.

IV.  <u>The Government Is Preserving the Interview Notes of Agents</u>

Ruggiero requests that the government be ordered to preserve for trial "all handwritten notes made by law enforcement agents during interviews." (Def. Mem. at 18). To the extent that such notes were taken by law enforcement agents, the government has endeavored to preserve them. Accordingly, the government respectfully submits that such an order is unnecessary.

V.  <u>Leave to File Further Motions</u>

Ruggiero requests leave to file further motions if he becomes aware of issues not known to him at this time. The government reserves the right to respond to those motions if and when they are filed.

<u>CONCLUSION</u>

For the reasons set forth above, the defendant's pre-trial motions should be denied in their entirety.

Dated:  Brooklyn, New York
        March 2, 2012

                                        Respectfully submitted,

                                        LORETTA E. LYNCH
                                        United States Attorney
                                        Eastern District of New York
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201

Jacquelyn M. Kasulis
Whitman G.S. Knapp
Assistant United States Attorneys
     (Of Counsel)

20